0593

Margaret ALVERSON, formerly known as Margaret Masters, Respondent, v. The MINNESOTA MUTUAL LIFE INSURANCE COMPANY and Bankers Mortgage Corporation, formerly NCNB Mortgage Corporation, Appellants.

(339 S. E. (2d) 140)

Court of Appeals

*Edwin B. Parkinson, Jr.* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for appellants.*

*Barney O. Smith, Jr.* and *Rita M. McKinney* of *Lathan, Smith & Barbare,* Greenville, *for respondent.*

Heard Oct. 17, 1985.

Decided Dec. 5, 1985.

SHAW, Judge:

Minnesota Mutual Life Insurance Co., and Bankers Mortgage Corporation, formerly NCNB Corporation, appeal the circuit court order requiring payment of policy proceeds to respondent Margaret Alverson, formerly known as Margaret Masters. We reverse.

On or about October 8, 1979, appellant insurance company issued a policy covering a mortgage of $18,000 on the life of Donald Leon Masters, respondent's first husband. Mr. Masters committed suicide on October 22, 1979. Insurance premiums were paid by respondent as part of monthly mortgage payments until May or June of 1982. She was unaware of the mortgage insurance. However, in either December of 1979 or in January of 1980, she inquired of the NCNB office in Charlotte, N. C. regarding the type of insurance paid as a part of the mortgage payment. She advised them of her husband's death. She was told it was for MGIC coverage required on VA loans. In November of 1980 she informed NCNB of her remarriage and again told them of Mr. Masters' death. The employee of Bankers Mortgage failed to take administrative steps to terminate the insurance and to adjust the amount payable by Mrs. Masters. In May or June of 1982, Mrs. Masters received a letter from Minnesota Mutual soliciting additional insurance. Upon receipt of the letter she telephoned the home office of Minnesota Mutual in St. Paul. It was at this time she learned that a mortgage life policy had been executed by her late husband. She informed the company of her husband's death by suicide in October 1979. The company refunded the premium paid in the amount of $172.80.

The dispositive issue is whether the excluded death by suicide within two years can be overridden by the two year incontestable clause for payment of proceeds.

The two litigated clauses of the policy read:

> Incontestability. Except for nonpayment of premiums, this policy shall be incontestable after it has been in force for a period of two years from its effective date. Suicide. If within two years from the effective date the Insured dies by suicide, whether sane or insane, the liability of the Company shall be limited to the amount of premiums paid.

The trial judge held acceptance of premiums after notice of Mr. Masters' death by suicide constituted a waiver of the insurance company's right to assert a defense to the suicide clause. We disagree.

The doctrines of waiver and estoppel cannot operate to bring excluded risks within the coverage of an insurance policy, but the doctrines may be applied to forgive conditions which otherwise would cause a forfeiture of the policy. In this case, equitable estoppel applied to insurer who had continued to accept premiums, because 'it may reasonably be inferred that the insured ... has been misled by such conduct to believe that the insurer had continued to accept coverage [sic].' Since the court ruled the insurance company was estopped to deny coverage because it had continued to accept premiums, it did not reach the issue of implied waiver. *Pitts v. N. Y. Life Ins. Co.*, 247 S. C. 545, 148 S. E. (2d) 369 (1966).

Waiver cannot create coverage and cannot bring into existence something not covered in the policy.

The South Carolina incontestability statute supports the position that a suicide clause does not come within the purview of the incontestability clause on the rationale the suicide clause is an exclusion from coverage and not a contest of the policy itself.

S. C. Code § 38-9-250 (1976):
All companies which issue ... insurance on the life of a person shall, after a period of two years from the date of such ... insurance, be deemed and taken to have waived any right they may have had to dispute the truth of the application for insurance or to assert that the assured person has made false representations, and such application and representations shall be deemed and taken to be true.

We hold suicide is an excluded risk and works as a forfeiture of the policy and the doctrine of waiver cannot operate to rewrite the policy to make it a covered risk.

Reversed.

GARDNER, J., and LITTLEJOHN, Acting J., concur.